Jean C. McELREATH, Relator,

v.

Wells STEWART, Judge, Court of Domestic Relations, Respondent.

No. B–6345.

Supreme Court of Texas.

Jan. 26, 1977.

William E. Wright, Houston, for relator.

Wells Stewart, pro se.

McGEE, Justice.

This is an original mandamus proceeding where Jean C. McElreath, relator, seeks a writ of mandamus compelling Wells Stewart, Judge of the Court of Domestic Relations Number One of Harris County, to vacate his order denying relator's writ of habeas corpus and to issue the requested writ. The primary question presented in this case is whether the trial court judge was justified in his denial of habeas corpus relief based on the "serious immediate welfare" provision of section 14.10(c) of the Texas Family Code, despite a valid judgment giving custody to the party seeking the writ of habeas corpus. We hold that in this case reliance on section 14.10(c) was unjustified and the writ of habeas corpus should have been issued.

Jean and Ross McElreath were divorced February 7, 1967 in the Court of Domestic Relations Number One of Harris County, Texas. Jean McElreath (Jean) was given custody of the three minor children and Ross McElreath (Ross) was required to make child support payments. Subsequent to the divorce decree, the two older children left Jean and began to live with their father, Ross. Jean and the youngest child moved to San Antonio where Jean attended law school. In 1974 Ross filed suit in San Antonio to modify the previous order of the domestic relations court in Harris County. On July 24, 1974 the district court in San Antonio, after determining that no other court had continuing jurisdiction, denied Ross' motion to modify the Harris County court's order. The court also denied Ross' motion to be appointed managing conservator of Gregory McElreath (Gregory). Pursuant to the order of the district court in San Antonio, Jean was to continue as managing conservator and continue to receive child support payments from Ross. Jean and Gregory moved to Austin and in the summer of 1976 Gregory traveled to Houston to visit his father. Under the terms of the 1974 order, Ross was required to return Gregory to his mother in Austin "at least twenty days prior to the commencement of school." Jean allowed Gregory to remain with his father longer than specified in the court order so Gregory could complete a vacation to Disneyworld in Florida. Jean expected Gregory to return to Austin on August 22, 1976 and when Gregory failed to arrive on the bus, Jean telephoned Gregory's father in Houston. Jean was informed by Gregory's stepmother that Ross was out of town but had instructed that Gregory was not to be returned to Austin.

Jean filed her application for writ of habeas corpus, writ of attachment and temporary restraining order in the Domestic Relations Court Number One of Harris County on August 25, 1976. Judge Stewart issued the writ of attachment but voided it the next day. A hearing was then commenced on the application for writ of habeas corpus. Jean submitted into evidence the 1974 district court order giving her custody of Gregory and denying Ross' motion to be appointed managing conservator. The trial court advised Jean that evidence would be heard concerning the immediate welfare of

the child pursuant to section 14.10(c) of the Texas Family Code. The scope of the hearing which followed greatly exceeded the narrow considerations necessary to determine the applicability of section 14.10(c). It is fair to say that the proceeding resembled a full-fledged hearing to modify the custody of a child. During the hearing the trial court was informed that Gregory, who had become 14 years of age, had signed an affidavit under section 14.07 of the Family Code, stating that he wished to live with his father. On August 30, 1976 Ross filed a motion to be appointed temporary managing conservator and to either abate the child support payments or have the payments made to himself as temporary managing conservator. The trial court granted Ross' motion on September 13, 1976 making Ross temporary managing conservator and withdrawing the writ of attachment. Jean filed a writ of mandamus with this court on November 17, 1976, to which Judge Stewart made no. response.

■ It is our opinion that the trial court erred in expanding the scope of the habeas corpus hearing to include matters which did not concern the immediate welfare of the child as provided in section 14.10 of the Texas Family Code. The Family Code provides:

"§ 14.10. Habeas Corpus.

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

(b) The court shall disregard any cross action or motion pending for modification of the decree determining managing conservatorship, possession, or support of or access to the child unless it finds that the previous order was granted by a court of another state or nation and that:

(1) the court did not have jurisdiction of the parties; or

(2) the child has been within the state for at least 12 months immediately preceding the filing of the petition for the writ.

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

(d) While in this state for the sole purpose of compelling the return of a child through a habeas corpus proceeding, the relator is not amenable to civil process and is not subject to the jurisdiction of any civil court except the court in which the writ is pending and in that court only for the purpose of prosecuting the writ.

(e) If the right to possession of a child is not governed by a court order, the court in a habeas corpus proceeding involving the right of possession of the child shall compel return of the child to the relator if, and only if, it finds that the relator has a superior right to possession of the child by virtue of the rights, privileges, duties, and powers of a parent as set forth in Section 12.04 of this code.

(f) The court shall disregard any motion for temporary or permanent adjudication relating to the possession of the child in a habeas corpus proceeding brought under Subsection (e) of this section unless at the time of the hearing an action is pending under this chapter, in which case the court may proceed to issue any temporary order as provided by Section 11.11 of this code."

This court has recently held that where there is a valid existing judgment of child custody, the issues of best interest of the child and right of possession should not be re-litigated in a habeas corpus proceeding. *Standley v. Stewart*, 539 S.W.2d 882, 883 (Tex.1976). The order of the trial court in this case provides in pertinent part:

"Upon consideration of the evidence and the wishes of the minor child, the court was of the opinion that the best interests of the child would best be served if the application for writ was denied and the court thus rendered its decision denying the subject application for writ of habeas corpus in open court on August 30, 1976.

.   .   .   .   .

"In response to the cross motion of respondent Ross McElreath for 'Appointment as Temporary Managing Conservator,' the court finds, pursuant to the authority of § 14.10(c), TEXAS FAMILY CODE ANN. (1975), that there is a serious immediate question concerning the welfare of the child in question and that the best interests of the child shall be served by granting said cross motion. It is, accordingly, ORDERED that Ross McElreath be, and he is hereby, named Temporary Managing Conservator of the child, Gregory Cornelius McElreath, and shall possess all rights and privileges attendant thereto. It is further ORDERED thereto that any and all obligations of the said Ross McElreath to pay child support, as heretofore ordered with reference to the support of the said child, and which may accrue during the pendency of this Order, shall be paid to himself as Temporary Managing Conservator of the child."

It is evident that the order contemplated more than the immediate welfare of the child and this was error. *Standley v. Stewart,* supra.

■ The only relevant distinction in the *Standley* case and the situation here is that in *Standley* the trial court specifically stated that it was not acting under the provisions of section 14.10(c). 539 S.W.2d at 883. The order of the trial court in our case expressly states that it was acting pursuant to section 14.10(c), but we hold that the trial court's reliance on that section was not justified in this case. This court recognizes that a trial court can exercise great discretion in issuing orders for the immediate protection of a child and it is not the intention of this court to usurp the discretionary power of trial courts in such situations. There are no cases discussing the degree of seriousness or immediacy which would allow a court to issue a temporary order under section 14.10(c). There are cases, however, which discuss the situations necessary to issue temporary custody orders. This court has held that if the safety and well-being of a child are in jeopardy, a trial court may enter an order vesting temporary custody in a party other than the child's legal custodian. *Page v. Sherrill,* 415 S.W.2d 642, 645 (Tex.1967). The court contemplated a situation where the child was in imminent danger of physical or emotional harm and immediate action was necessary to protect the child. 415 S.W.2d at 645; *see Brown v. Brown,* 500 S.W.2d 210, 214 (Tex.Civ.App.—Texarkana 1973, no writ); *Rodriguez v. Vela,* 488 S.W.2d 872, 876–877 (Tex.Civ.App.—San Antonio 1972, no writ) (concurring and dissenting opinions); *Widner v. Pixley,* 439 S.W.2d 403, 406–407 (Tex.Civ.App.—Beaumont 1969, no writ).

The record in this case discloses nothing which could make Gregory's situation serious and immediate. Gregory's father and stepmother both testified that Gregory would be hurt and upset if he returned to his mother. In chambers, Gregory testified that it would hurt him to return to his mother because he did not want to live with her. Gregory's reasons for not wanting to return to his mother were because his mother gave him more responsibilities than his father, she nagged him, and sometimes made him mad. There is absolutely no contention that Gregory is not loved and well cared for by his mother. We hold that the situation in this case falls far short of the necessary statutory requisites of immediacy and seriousness.

■ This court is empowered to issue a writ of mandamus when a trial court acts beyond its power and in so doing vacates or

changes a final adjudication. *Standley v. Stewart,* 539 S.W.2d 882, 883 (Tex.1976); *McHone v. Gibbs,* 469 S.W.2d 789 (Tex. 1971).

A writ of mandamus will issue directing Judge Stewart to set aside his order of September 13, 1976 and to issue the writ of habeas corpus.