

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00172-CV

**IN RE** Brittney **DIRKSEN-MAYHEW**

Original Mandamus Proceeding[1]

Opinion by:     Beth Watkins, Justice

Sitting:        Patricia O. Alvarez, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: June 20, 2024

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relator Brittney Dirksen-Mayhew (Mother) filed a petition for writ of mandamus challenging temporary orders the trial court signed after Mother filed a petition for writ of habeas corpus seeking the return of her child, N.G.D. Because the trial court had a ministerial duty to grant Mother's habeas petition, we conditionally grant mandamus relief.

## BACKGROUND

Mother and real party in interest Garrett Dean Lichtenberg (Father) are N.G.D.'s parents. On May 21, 2018, the trial court signed an Order in Suit Affecting the Parent Child Relationship (the 2018 order) in cause number 2012-CI-00420. The 2018 order appointed Mother and Father as

---

[1] This proceeding arises out of Cause No. 2023-CI-26045, styled *Ex parte N.G.D., a Child*, pending in the 224th Judicial District Court, Bexar County, Texas, the Honorable Lisa K. Jarrett, Visiting Judge, presiding.

N.G.D.'s joint managing conservators, gave Mother the exclusive right to designate the child's primary residence, and established Father's periods of visitation with the child.

On March 19, 2020, during one of his scheduled weeknight visits with N.G.D., Father informed Mother that he intended to keep N.G.D. through the weekend.[2] Father did not dispute that this decision was contrary to the 2018 order. When Mother and her husband traveled to Father's home to retrieve N.G.D., a physical altercation occurred between Mother and her husband and Father and his wife.

After this altercation, Father sought to modify the 2018 order to give him the right to establish N.G.D.'s primary residence. In support of his motion—which he filed in cause number 2012-CI-00420—Father attached an affidavit describing the March 2020 altercation. Mother alleged that Father was illegally restraining N.G.D. in violation of the 2018 order, and she filed a petition for writ of habeas corpus and writ of attachment in a separate cause number. After a combined evidentiary hearing in which the trial court considered the filings in both cause numbers, the Honorable David Canales denied Father's motion for temporary orders, granted Mother's habeas petition, and ordered Father to return N.G.D. to Mother. Father did not take any further action to pursue his motion to modify at that time.

In 2023, Father filed an amended motion to modify and a motion for temporary orders in cause number 2012-CI-00420. Father's supporting affidavit alleged the same facts he had asserted in the 2020 motion that Judge Canales denied, plus new allegations that Mother had been indicted in connection with the 2020 altercation and that Father had "been made aware that a no contact order has been put in place for the protection of [N.G.D.] against [Mother]." Father's attorney later conceded, however, that the "no contact" order was actually a "no harmful or injurious contact"

---

[2] Under the 2018 order, Father was scheduled to have possession of N.G.D. on Thursday, March 19 until 7:30 p.m. and then again beginning at 6:00 p.m. on Friday, March 20.

order. Mother filed a motion asking the trial court to deny Father's motion for emergency temporary orders because his affidavit did not support the relief he requested. After considering Father's motion for emergency temporary orders and Mother's motion to deny that motion, the Honorable Angelica Jimenez instructed Father that he would "need to replead if [he]'d like to go forward" on his motion to modify and request for temporary orders.

On December 8, 2023, Father filed a motion in cause number 2012-CI-00420 asking the trial court to interview N.G.D. in chambers to determine her wishes regarding possession and conservatorship. On December 11, 2023, Mother filed a petition for writ of habeas corpus in cause number 2023-CI-26045, alleging that Father was again restraining N.G.D. in violation of the 2018 order. The same day Mother filed her habeas petition, Father filed a repleaded affidavit and motion for temporary orders in cause number 2012-CI-00420. The Honorable Nadine M. Nieto signed an order directing the parties to appear for a December 15, 2023 hearing on Mother's petition for writ of habeas corpus. Father's motion for temporary orders in cause number 2012-CI-00420 was not set for hearing on that day.

During the December 15 hearing on Mother's petition in cause number 2023-CI-26045, the Honorable Lisa K. Jarrett, respondent here, took judicial notice of Father's filings in cause number 2012-CI-00420 and interviewed N.G.D. in chambers. After it interviewed the child, the trial court announced it was "not going to make a ruling on the order for writ of habeas corpus" but would instead "do a sua sponte kind of Band-Aid temporary order[.]" On January 29, 2024, the trial court signed written temporary orders that: (1) repeated the court's oral assertion that it was entering sua sponte temporary orders in lieu of ruling on Mother's habeas petition; (2) awarded Father the exclusive right to designate N.G.D.'s residence; and (3) established periods of visitation between Mother and N.G.D.

On March 11, 2024, Mother filed a petition for writ of mandamus challenging the trial court's temporary orders. We invited Father and the respondent to file responses to Mother's petition, but neither did so.

## ANALYSIS

### *Applicable Law*

If a child is withheld from a person who has superior right to possession under a valid court order, the aggrieved individual may file a petition for writ of habeas corpus to demand the child's return. TEX. FAM. CODE ANN. §§ 157.371(a), 157.372(a). "[T]he trial court's authority to refuse habeas corpus relief is very limited" if the relator establishes she has the legal right to possession of the child. *In re deFilippi*, 235 S.W.3d at 323 (Tex. App.—San Antonio 2007, orig. proceeding) (per curiam). "Upon proof of the bare legal right of possession, the grant of the writ of habeas corpus should be automatic, immediate, and ministerial." *Id.* at 322 (citing *Schoenfeld v. Onion*, 647 S.W.2d 954, 955 (Tex. 1983) (orig. proceeding) (per curiam) *and Strobel v. Thurman*, 565 S.W.2d 238, 239 (Tex. 1978) (orig. proceeding)).

If the relator establishes her legal right to possession of the child, the trial court has no discretion to refuse the writ unless there is evidence "raising a serious immediate question concerning [the] child's welfare[.]" *In re deFilippi*, 235 S.W.3d at 323. "A serious immediate question requires a situation that, without the court's immediate action, would subject the child to imminent danger of physical or emotional harm." *Id.* "The trial court is not permitted to consider the child's best interest, nor go beyond the immediate welfare of the child, in a habeas corpus proceeding." *Id.* at 322; *see also McElreath v. Stewart*, 545 S.W.2d 955, 957 (Tex. 1977) (orig. proceeding) (trial court considering habeas petition for child's return erred by "expanding the scope of the habeas corpus hearing to include matters which did not concern the immediate welfare of the child") (considering predecessor to Texas Family Code section 157.372).

"Mandamus may issue to correct the erroneous denial of habeas corpus relief under the Texas Family Code." *In re deFilippi*, 235 S.W.3d at 322. We have previously granted mandamus relief where, as here, a trial court impliedly denied a petition for writ of habeas corpus by entering temporary orders. *See Grimes v. Flores*, 717 S.W.2d 949, 950–52 (Tex. App.—San Antonio 1986, orig. proceeding) (en banc).

### *Application*

Mother's habeas petition alleged that Mother was "entitled to possession of" N.G.D.; Father was "illegally restraining" N.G.D. from Mother's possession; and N.G.D. was "located at" Father's home address. She also alleged, "There are no superseding possession orders in this cause." As support for these allegations, she presented a copy of the 2018 order, which provided that Mother had the exclusive right to designate N.G.D.'s primary residence; Father had the right to possession of N.G.D. during specified times; and Mother had the right to possession of N.G.D. "at all other times not specifically designated[.]" Because the 2018 order established that Mother had the legal right to possession of N.G.D. at all times other than Father's specified periods of visitation, the trial court had an "automatic, immediate, and ministerial" duty to grant the petition unless Father presented evidence of a serious immediate question regarding N.G.D.'s welfare. *See Schoenfeld*, 647 S.W.2d at 955; *Stobel*, 565 S.W.2d at 239; *In re deFilippi*, 235 S.W.3d at 322–23.

The trial court did not expressly find that Father met this burden, and we see no evidence to support a conclusion that he did. *See Grimes*, 717 S.W.2d at 952. Father did not file a response to Mother's habeas petition or offer any testimony during the hearing on the petition. Instead, he relied on his filings in cause number 2012-CI-00420, which were not set for hearing on the day the trial court heard Mother's habeas petition. Assuming, without deciding, that the trial court could properly consider Father's filings in cause number 2012-CI-00420, those documents did not

allege a "dire emergency" that would justify the denial of Mother's petition. *See Schoenfeld*, 647 S.W.2d at 955; *In re deFilippi*, 235 S.W.3d at 323–24 (concluding, in custody dispute between father and grandparents, that grandparents did not make showing necessary to defeat father's habeas petition by alleging children were traumatized by their mother's violent death and that father was a suspect in the death).

Father's motion for temporary orders alleged Mother had "engaged in criminal activity that puts the well being of the child at risk." As support, he pointed to his allegations regarding the 2020 altercation. Father did not, however, explain why an event that occurred more than three years before Mother filed her habeas petition—and which a different trial court judge had previously determined was insufficient to deny Mother's earlier request for habeas relief—showed that immediate action was necessary to protect N.G.D. from imminent physical or emotional harm. *See Strobel*, 565 S.W.2d at 240. While Father noted Mother had been indicted in connection with the 2020 altercation, we have previously held that pending criminal charges, standing alone, did not satisfy the "serious and immediate question" threshold necessary to deny a habeas petition seeking the return of a child. *See Grimes*, 717 S.W.2d at 950–52; *see also In re deFilippi*, 235 S.W.3d at 324.

Father also averred that a Bexar County judge had "issued a No Contact order between [Mother] and" N.G.D and that Mother had "sent messages and tried to contact the child through her sister and her mother" in violation of that order. Father did not attach the alleged no contact order to his affidavit, and no such order appears in our mandamus record. As explained above, however, his attorney conceded during a December 8, 2023 hearing before Judge Jimenez that the order at issue prohibited only harmful or injurious contact. This allegation therefore "discloses nothing which could make [N.G.D.'s] situation serious and immediate." *McElreath*, 545 S.W.2d at 958.

Finally, Father averred that Mother had interfered with his possession of and access to N.G.D. He also averred that N.G.D. had expressed a desire to remain in his home "as to avoid being put in the middle," and he expressed his belief that N.G.D.'s "emotional and psychological development *may be* hindered or damaged because of" Mother's purported actions. (emphasis added). He did not, however, provide any factual details to support a conclusion that these allegations established an imminent physical or emotional harm to N.G.D. *See Schoenfeld*, 647 S.W.2d at 955; *McElreath*, 545 S.W.2d at 958; *Grimes*, 717 S.W.2d at 951–52.

The mandamus record also indicates the trial court interviewed N.G.D. in chambers. While it does not appear that any record was made of that interview, neither the trial court's statements on the record nor its written order indicate that the court found a serious and immediate question regarding N.G.D.'s welfare.[3] Instead, the record shows that both the trial court's sua sponte temporary orders and its refusal to rule on Mother's habeas petition were based on what it believed to be in N.G.D.'s best interest. But under this court's existing precedent, "[t]he court cannot consider the children's best interests in a habeas corpus proceeding[.]" *Grimes*, 717 S.W.2d at 951. "A temporary order denying the writ 'in the best interest of the child' may not be used as a device to avoid the mandate of" section 157.372. *See Schoenfeld*, 647 S.W.2d at 955 (construing section 157.372's predecessor statute); *McElreath*, 545 S.W.2d at 958 ("It is evident that the order contemplated more than the immediate welfare of the child and this was error.").

Finally, a hearing on a habeas petition does not "permit a relitigation of custody[.]" *Grimes*, 717 S.W.2d at 951. Nevertheless, in lieu of ruling on Mother's habeas petition, the trial court

---

[3] For example, while the trial court temporarily "order[ed] the child to remain with Dad," it also stated N.G.D. would be "going with Mom today" after the hearing—a result that appears to be inconsistent with an implicit finding that Mother's possession of the child would subject her to imminent danger. *See Grimes*, 717 S.W.2d at 951–52 ("If immediate delivery of the children to Relator creates such a serious question concerning the welfare of the children, surely delivery of the children to Relator for purposes of visitation can have no different effect.").

entered temporary orders that changed the possession and access provisions of the 2018 order. Under the circumstances of this case, it lacked discretion to do so. *See id.* at 951–52.

Mother established that she had a legal right to possession of N.G.D., and Father did not establish the existence of a serious and immediate question concerning N.G.D.'s welfare. Consequently, the trial court had a ministerial duty to grant Mother's habeas petition. *See In re deFilippi*, 235 S.W.3d at 322; *Grimes*, 717 S.W.2d at 951. The court therefore abused its discretion by refusing to rule on the petition and entering sua sponte temporary orders that changed the possession and access provisions of the 2018 order. *See Grimes*, 717 S.W.2d at 952–53; *In re deFilippi*, 235 S.W.3d at 326.

## CONCLUSION

We conditionally grant the petition for writ of mandamus. We order the Honorable Lisa K. Jarrett to: (1) vacate the January 29, 2024 Temporary Orders; and (2) sign an order granting Mother's December 11, 2023 petition for writ of habeas corpus. *See* TEX. R. APP. P. 52.8(c); *Schoenfeld*, 647 S.W.2d at 956. We are confident the trial court will promptly comply; our writ will issue only if we are notified that it does not.

Beth Watkins, Justice